UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Stephanie Andrews

v.                                          Civil No. 16-cv-270-PB
                                            Opinion No. 2017 DNH 115
US Social Security Administration,
Acting Commissioner, Nancy A. Berryhill


MEMORANDUM AND ORDER

Stephanie Andrews challenges the Social Security

Administration's decision to deny her claim for Supplemental

Security Income ("SSI").  She argues that the Administrative Law

Judge ("ALJ") erred by ignoring a medical opinion and using lay

knowledge to assess her residual functional capacity ("RFC").


I.    BACKGROUND

In accordance with Local Rule 9.1, the parties have

submitted a joint statement of stipulated facts (Doc. No. 14).

Because that joint statement is part of the court's record, I do

not recount it here.  I discuss facts relevant to the

disposition of this matter as necessary below.


II.   STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the

parties and the administrative record and enter a judgment

affirming, modifying, or reversing the "final decision" of the

Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the ALJ's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

# III. <u>ANALYSIS</u>

Andrews is a thirty-one-year-old woman with negligible work history who alleges that she has been disabled since March 30, 2012.  In April 2013, she filed an application for SSI.  When her claim was denied, she requested a hearing before an ALJ.  The hearing was held in October 2014, and in March 2015 the ALJ issued a written decision concluding that Andrews was not disabled.

The ALJ evaluated her claim under the five-step sequential process for determining whether a claimant is disabled.  Tr. at 105–16; <u>see</u> 20 C.F.R. § 416.920(a).  At step one, the ALJ found that Andrews had not worked since she applied for benefits.  At step two, the ALJ found that Andrews had severe impairments of depression and panic disorder with agoraphobia, but declined to find any severe physical impairments.  At step three, the ALJ found that Andrews' impairments did not qualify for any listed impairment.  The ALJ then assessed Andrews' RFC, finding that she could physically perform "a full range of work at all exertional levels" but had a limited capacity for social interaction and handling complicated or unexpected work.  Recognizing at step four that she had no past relevant work, the ALJ found that despite her limitations Andrews could perform a significant number of jobs in the economy.  Accordingly, the ALJ concluded that Andrews was not disabled.  The Appeals Council

declined to review the ALJ's decision, which is now ripe for review in this court.

Andrews argues that the ALJ ignored the opinion of an examining psychologist and used lay knowledge to arrive at an RFC unsupported by any opinion in the record. The Acting Commissioner responds that the ALJ plainly considered the psychologist's opinion and did not improperly use lay knowledge to craft the RFC.

I begin by explaining that the ALJ did not ignore the psychologist's opinion. I then discuss the opinions and evidence supporting the mental RFC assessment before explaining why the physical RFC assessment does not present a reversible error.

## A.  Dr. Griffin's Opinion

Andrews argues that the ALJ ignored an opinion by examining psychologist Stefanie Griffin, Ph.D. For the following reasons, I disagree.

"Ordinarily . . . an ALJ's failure to consider a medical opinion in the record at all is legal error that requires remand." Grenier v. Colvin, 2015 DNH 133, 6. An ALJ must also evaluate all medical opinions. See 20 C.F.R. § 416.927(c) (2015) (amended 2017). Accordingly, an ALJ "must explain in the decision the weight given to" opinions by non-examining sources.

§ 416.927(e)(2)(ii); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In February 2014, as part of Andrews' application for state disability benefits, she attended a single examination with Dr. Griffin. See Tr. at 372-78. Dr. Griffin observed that Andrews' speech was normal, her affect was appropriate, and her mood was "mildly dysphoric." Tr. at 375. Andrews reported severe depression and anxiety that worsened in social settings. See, e.g., Tr. at 375. She also stated that she lacked friends. See Tr. at 375. Andrews reported the following daily routine: she awoke at 4:30 AM each morning to drive her boyfriend to work and spent the remainder of the day making breakfast for her children, playing games with her son, preparing her daughter for school, cleaning, playing games on her phone, picking up her boyfriend from work, picking up her son from school, and alternating cooking duties with her boyfriend. See Tr. at 375. Andrews successfully managed the household finances, but had difficulty showering and cleaning on a regular basis, and experienced anxiety while shopping alone. See Tr. at 375. Her medical care over the years was inconsistent, and she had a history of failing to take her prescribed medication. See Tr. at 374-76, 378.

On the basis of the examination, Dr. Griffin opined that Andrews has a "reduced quality of completion of daily activities

due to depressive symptoms"; "appears capable of interacting appropriately with others on a superficial level but [her] capacity for sustained relationships with others appears somewhat reduced"; and has "difficulty with attention/ concentration and task completion." Tr. at 376-77. As for work, Dr. Griffin opined, "[o]verall, [Andrews] does not appear capable of interacting appropriately with others in a work setting or adhering to a work schedule because of psychiatric symptoms." Tr. at 377. Dr. Griffin added that Andrews "does not appear to have had regular psychiatric treatment as an adult," and her functioning would improve if she consistently received such treatment and took her prescribed medications. See Tr. at 377-78. Based in part on Dr. Griffin's evaluation, Andrews was found disabled for purposes of the state disability program and Medicaid benefits. Tr. at 365-371, 379.

The ALJ plainly considered Dr. Griffin's opinion. In determining whether Andrews met a listed impairment and in assessing her RFC, the ALJ explicitly discussed Dr. Griffin's findings, see Tr. at 107, 110, and repeatedly cited her report, see Tr. at 106-07, 110. Thus, the notion that the ALJ ignored Dr. Griffin's opinion is flatly incorrect.

The ALJ also evaluated Dr. Griffin's opinion. In evaluating the medical opinions in the record, the ALJ wrote:

> I have fully considered the findings contained within
> the Medicaid Disability Determination, including the
> finding that the claimant meets listing 12.04, as
> previously discussed.  Nevertheless, I give little
> weight to such determination due to its inconsistency
> with the objective medical evidence and the other
> opinion evidence of record . . .

Tr. at 113.  Dr. Griffin's opinion and findings were part of the

state determination.  Although a nurse made findings for the

state, the ALJ evaluated Dr. Griffin's opinion as well.  First,

the ALJ repeatedly discusses it earlier in the decision.  See,

e.g., Tr. at 110 (noting that Andrews "reported to Dr. Griffin

that she often forget[s] to take [her medication], indicating

she was not necessarily compliant with treatment").  Second, the

ALJ's decision explains that the ALJ "fully considered the

findings contained within the Medicaid Disability Determination"

and found them inconsistent with the objective medical and

opinion evidence.  Tr. at 113.  Although the ALJ's statements

are not a paragon of clarity, I conclude that the ALJ did

evaluate Dr. Griffin's opinion.

Relatedly, Andrews argues that the ALJ erred by not

explicitly mentioning Dr. Griffin's finding that Andrews "does

not appear capable of interacting appropriately with others in a

work setting or adhering to a work schedule because of

psychiatric symptoms."  Tr. at 377; see Doc. No. 9-1 at 4.  But

the ALJ explicitly noted a contrary conclusion by reviewing

state agency psychologist Nicholas Kalfas, Ph.D.  Tr. at 113.

The ALJ gave partial weight to Dr. Kalfas' opinion, discounting only the "overly pessimistic" finding that Andrews had moderate limitations in activities of daily living because the finding conflicted with the record.  See Tr. at 113.  The ALJ also mentioned and implicitly discounted a finding by examining psychologist Robert Su Prescott, Ph.D., that Andrews had work-interaction limitations similar to those found by Dr. Griffin. See Tr. at 112–13, 309.  The ALJ's discussions are adequate when coupled with her explanation that Dr. Griffin's opinion was "inconsisten[t] with the objective medical evidence and the other opinion evidence of record."  Tr. at 113.  Moreover, the assigned RFC essentially reflects the work-interaction difficulties identified by Dr. Griffin with relatively minor differences.  See Tr. at 108.  For these reasons, the ALJ did not commit reversible error by not explicitly mentioning Dr. Griffin's statement.  See Ward, 211 F.3d at 656 ("While an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise." (citation omitted)).

Accordingly, the ALJ's handling of Dr. Griffin's opinion does not warrant remand.

**B.**     **RFC Assessment**

Andrews next argues that the ALJ impermissibly used lay knowledge to craft an RFC that departs from every medical

opinion in the record, including the lone physical RFC
evaluation.  The Acting Commissioner responds that the ALJ's RFC
assessment was supported by substantial evidence and emphasizes
the dearth of objective medical evidence showing a disabling,
medically determinable physical impairment.

A claimant's RFC is "the most [the claimant] can still do
despite [her] limitations."  20 C.F.R. § 416.945(a)(1).  The ALJ
must assess the claimant's RFC "based on all the relevant
evidence in [the] record."  Id.  On appeal, I determine whether
the assigned RFC is free of legal error and supported by
substantial evidence.  See Nguyen, 172 F.3d at 35.

1.  Mental Limitations

Andrews argues that the ALJ rejected every medical opinion
and used lay knowledge to "craft[] an RFC unlike any imagined by
the medical professionals in the [record]."  Doc. No. 9-1 at 6.
I disagree.

The ALJ gave the following assessment of Andrews' mental
limitations:

> [Andrews] can understand, carry out and remember
> simple instructions.  She can make judgment[s] on
> simple work that is repetitive from day to day with
> few and expected changes.  Furthermore, she can
> interact occasionally with supervisors and coworkers,
> but not with the general public.

Tr. at 108.  In crafting this RFC, the ALJ considered the
objective medical record, five opinions, Andrews' daily

activities, her treatment history, and her statements about her symptoms. The ALJ determined that although Andrews' depression and panic disorder imposed functional limitations, her allegations regarding the extent of those limitations were not fully credible.

The ALJ's RFC largely mirrors the RFC by reviewing state agency psychologist Kalfas, who opined that Andrews

> is limited to understanding, remembering and carrying out short and simple instructions. She is able to get along with coworkers and supervisors, and respond to supervisory criticism, in a semi-isolated work station under non-critical supervision. Under these conditions, she is able to adjust to routine stressors. She is able to ask simple questions, request assistance, and set routine goals in the work setting. She can keep a regular schedule without special supervision. She is able to sustain a full 8 hour day and 40 hour week, without an unreasonable number of interruptions from psychologically based symptoms.

Tr. at 95. The ALJ accorded Kalfas' opinion partial weight.[1] The ALJ also gave weight to a similar opinion by examining consultant psychologist Su Prescott.[2] As for the remaining opinions, the ALJ explicitly considered and evaluated them. <u>See</u>

---

[1] The ALJ discounted only the finding that Andrews had moderate limitations in activities of daily living. The ALJ explained that this finding "overly pessimistic" in light of Andrews' reported daily activities, including successfully caring for two young children. <u>See</u> Tr. at 113.

[2] The ALJ discounted Dr. Su Prescott's opinion to the extent that he examined Andrews only once and lacked a treating relationship with her. Tr. at 112–13.

Tr. at 113–14.  Thus, despite Andrews' protestation, the mental RFC assessment found by the ALJ is a far cry from Jabre v. Astrue, where the "ALJ reject[ed] the opinion of a medical professional as a step toward fashioning an RFC that [was] unsupported by any other medical opinion in the record."  See Jabre v. Astrue, No. 11-cv-332-JL, 2012 WL 1216260, at *8 (D.N.H. Apr. 5, 2012), report and recommendation adopted sub nom. Jabre v. U.S. Soc. Sec. Admin., No. 11-cv-332-JL, 2012 WL 1205866 (D.N.H. Apr. 9, 2012).  Here, in contrast, the assigned RFC is supported by the opinions of two psychologists.

More particularly, Andrews argues that "[t]he ALJ's limitation that 'she can interact occasionally with supervisors and co-workers' is not supported by any medical opinion."  Doc. No. 9-1 at 9.  I disagree because Dr. Kalfas expressed essentially the same opinion that the ALJ adopted on this issue. See Tr. at 95.[3]  Moreover, Andrews does not challenge the ALJ's

---

[3] The ALJ did not err by not explicitly adopting Dr. Kalfas' statement that Andrews can "respond to supervisory criticism, in a semi-isolated work station under non-critical supervision." See Tr. at 95; see also Doc. No. 9-1 at 9.  The social limitations found by the ALJ — only occasional interaction with coworkers and supervisors and no interaction with the general public — essentially reflect Dr. Kalfas' vague limitations.  See Cericola v. Colvin, No. 2:12-CV-391-DBH, 2013 WL 5674342, at *2-4 (D. Me. Oct. 15, 2013) (affirming where ALJ interpreted limitation to "occasional or well-modulated criticism" as limitation to "brief supervision" with a preference for independent work); Downs v. Colvin, 2015 DNH 113, 9-11, 27 (affirming where ALJ omitted limitation of 'not-overly-critical' supervision but limited claimant to "brief and superficial"

determinations that she was not fully credible and failed to
follow prescribed treatment that would improve her symptoms.
See 20 C.F.R. § 416.930(a) (2015) (amended 2017) ("In order to
get benefits, you must follow treatment prescribed by your
physician if this treatment can restore your ability to work . .
. ."); see also, e.g., Tr. at 110 (noting that Andrews "was not
necessarily compliant with treatment"), 111, 112 (noting that
Andrews' treatment was "essentially conservative," and she "has
generally not received the type of medical treatment one would
expect for a disabled individual").  Thus, the ALJ did not
improperly use lay knowledge in finding that Andrews could
occasionally interact with coworkers and supervisors.

---

interaction with supervisors); Breton v. Berryhill, 2017 DNH
061, 13 n.1, 26 (affirming where ALJ omitted limitation to 'not-
overly-critical' supervision despite RFC opinion to that
effect); Robar v. Astrue, 2011 DNH 110, 9, 14, 22-23 (affirming
where ALJ omitted limitation to 'not-overly critical'
supervision found in opinion to which ALJ gave great weight);
cf. Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004)
(remanding where ALJ failed, inter alia, to limit claimant's
interaction with supervisors despite finding that claimant had
limited ability to respond to supervisors' criticism).
Moreover, several opinions omitted a limitation to non-critical
supervision.  Cf. Lincourt v. Colvin, 2014 DNH 199, 9-12, 14
(affirming where at least one RFC evaluation found claimant
could accept supervisory criticism, and implicitly finding 'not-
overly-critical' supervision limitation was consistent with no
supervisory limitation and occasional coworker interaction).
But see MacKenzie v. Colvin, 2016 DNH 034, 7, 10-13 (remanding
where, inter alia, ALJ limited claimant to "brief and
superficial social interaction with . . . supervisors" but "ALJ
did not explain why he omitted the requirement of a non-critical
supervisor" found in only opinion supporting ability to work).

For these reasons, the ALJ did not err in assessing Andrews' mental limitations.

2.  Physical Limitations

Andrews next argues that the ALJ improperly used lay knowledge in arriving at a physical RFC that was not fully supported by the only physical RFC evaluation in the record. The Acting Commissioner responds that the evidence did not support more than a mild physical impairment.

Before examining Andrews' argument, I highlight what she does not challenge. First, Andrews does not challenge the ALJ's conclusion at step two that she had no severe, medically determinable physical impairments. See 20 C.F.R. § 416.905 ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . To meet this definition, you must have a severe impairment(s). . . ."); § 416.908 (2015) (amended 2017) ("Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and cannot be established merely "by your statement of symptoms"). Had the ALJ not found that Andrews' mental impairments were severe, the ALJ would not have fashioned an RFC because her disability claim would have failed at step two. See § 416.920(a)(4)(ii); Tonev v. Sullivan, 977 F.2d 566,

13

at *2 (1st Cir. 1992) (per curiam) (unpublished); Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446–47 (1st Cir. 1991) (per curiam).[4]

Second, Andrews does not challenge the ALJ's credibility determination. Andrews bore the burden of proving by a preponderance of the evidence that she was disabled due to a medically determinable impairment. See Morse v. U.S. Soc. Sec. Admin., Comm'r, No. 12-cv-446-PB, 2013 WL 5776148, at *5 (D.N.H. Oct. 25, 2013); § 416.905. But a claimant's statements about her pain cannot alone establish that she is disabled. § 416.929(a) (2015) (amended 2017). Instead, "there must be medical signs and laboratory findings which show . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." Id. Andrews fails to challenge the ALJ's determination that the pain Andrews reported was not credible to the extent alleged, given the medical record and her daily activities.

With these considerations in mind, I examine Andrews' argument that the ALJ improperly used lay knowledge to assign a physical RFC without an expert RFC evaluation directly on point. Generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Manso-Pizarro v. Sec'y

---

[4] Andrews does not argue that the ALJ failed to consider all of her impairments in formulating the RFC.

of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (per curiam). For that reason, "an expert's RFC evaluation is ordinarily essential." See id. "Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." Id. Such independent judgments are permissible so long as the "evidence suggests a relatively mild . . . impairment posing, to the layperson's eye, no significant . . . restrictions." Roberts v. Barnhart, 67 F. App'x 621, 623 (1st Cir. 2003) (per curiam) (unpublished) (alterations in original) (quoting Manso-Pizarro, 76 F.3d at 17–18); see also Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (per curiam).

The medical record and the hearing in this case centered on Andrews' mental limitations, not any exertional or postural limitations. Although Andrews alleged that she had physical impairments, she conceded to the ALJ that "they're not documented." Tr. at 42. Andrews alleged "severe back and hip pain" and tendonitis in her arms, Tr. at 42, 218,[5] but she did not discuss these alleged impairments with treating providers, see, e.g., Tr. at 373–74. At Andrews' primary-care appointments, she consistently presented with a normal gait,

---

[5] The ALJ also recognized Andrews' acne, obesity, and headaches as non-severe impairments.

see, e.g., Tr. at 329, 334, 337, inconsistently reported back and joint pain, see, e.g., Tr. at 325, 333, 346, and musculoskeletal examinations were normal, see, e.g., Tr. at 325, 334.

The record contains one physical RFC report.  In July 2013, Andrews was examined by consulting physician G. Silvia Sironich-Kalkan, M.D.  Tr. at 301.  The examination results were essentially normal.  Although Andrews alleged arm and hand numbness, and Dr. Sironich-Kalkan noted spinal "tenderness," there is no elaboration.  Tr. at 303.  Dr. Sironich-Kalkan wrote that Andrews

> reports that she can be sitting as much as she needs, standing 15 minutes, her back hurts, walking 30 minutes, she has pain in her feet and her hip.  In an assessment of eight hours, she can cumulative be sitting for four hours and standing and walking for three hours.  She does not need to lie down during the day.  She can lift and carry on an occasional basis 70 pounds.  She has no trouble bending, squatting, or kneeling for short periods of time.

Tr. at 301.

The ALJ accorded this opinion little weight.  The ALJ noted that although the examination revealed no significant abnormalities, Dr. Sironich-Kalkan determined without explanation that Andrews was subject to restrictive limits on sitting, standing, and walking.  The ALJ explained that those assessments "are essentially a reflection of the claimant's self-reported allegations of physical pain and limitations and

16

are unsupported by the medical record and her own contemporaneous findings." Tr. at 112.

I conclude that the ALJ did not err in discounting Dr. Sironich-Kalkan's conspicuously self-contradictory assessment. Dr. Sironich-Kalkan noted Andrews' admission that "she can be sitting as much as she needs," but inexplicably opined that Andrews "can cumulative be sitting for four hours." Tr. at 301. Similarly, Dr. Sironich-Kalkan wrote that Andrews "does not need to lie down during the day," but inexplicably opined that she can cumulatively sit, stand, and walk for only seven out of eight hours. Tr. at 301. These limitations conflict not only with Dr. Sironich-Kalkan's essentially normal examination results, but also with Andrews' sparse complaints to treating sources and the absence of any supporting diagnoses, treatment, and diagnostic or laboratory findings. Finally, although Dr. Sironich-Kalkan opined that Andrews' anxiety and depression precluded work, she failed to likewise state that Andrews' alleged physical impairments precluded work. Given the significant weaknesses in Dr. Sironich-Kalkan's opinion, the ALJ permissibly accorded it little weight. See Swales v. Berryhill, No. 16-10214-RWZ, 2017 WL 1164488, at *3-4 (D. Mass. Mar. 28, 2017) (stating that ALJ did not err in according little weight to only physical RFC evaluation in record).

Andrews also argues that the ALJ erred in assessing an RFC without an expert RFC opinion directly on point.  I disagree.  It is true, of course, that an ALJ may not interpret technical medical data or draw functional conclusions from a highly ramified medical record.  But the flaw in Andrews' position is the lack of medical evidence of disabling physical impairments to evaluate in the first place.  For example, a physician assistant examining Andrews noted that her disabling impairment was "mental status (anxiety)" without noting any disabling physical impairments.  See Tr. at 114, 325 (also noting that Andrews denied any pain, including back and joint pain); SSR 06-03p, 2006 WL 2329939, at *2 (August 9, 2006) (stating that ALJ may use information from physician assistants to assess severity and functional impact of an impairment).  Although the ALJ as layperson may not interpret raw, technical, medical data, Andrews does not cite any medical evidence that outstripped the ALJ's ken as a layperson.  Andrews does not even suggest what medically determinable physical impairment could plausibly have imposed the sitting, standing, and walking limitations found by Dr. Sironich-Kalkan.

I conclude that the ALJ was permitted to draw the commonsense conclusion that Andrews was physically able to perform sedentary work.  Sedentary work generally involves sitting for six hours, standing or walking for two hours, and

lifting at most 10 pounds.  See 20 C.F.R. § 416.967(a); SSR 83-10, 1983 WL 31251, at *5 (January 1, 1983).  The ALJ was permitted to find that Andrews had the required capacity for lifting because there was no evidence of diminished strength and Dr. Sironich-Kalkan found that Andrews could occasionally lift 70 pounds.  See § 416.967(a); Tr. at 301.  The ALJ was also permitted to find that Andrews could sit for six hours.  There was no objective medical evidence of hip or back impairments, save a lone note of spinal "tenderness," and the record does not contain any explanation, diagnosis, or treatment.  Moreover, the ALJ's credibility determination went unchallenged, and Andrews admitted that she can sit "as much as she needs."  Tr. at 301. The ALJ was also permitted to find that Andrews could perform the modest standing and walking required for sedentary work. There was simply no diagnosis of hip or back disorder, no medical evidence to corroborate Andrews' one-off complaint of foot pain, and no treatment for these alleged impairments.  In addition, Andrews admitted doing housework for five-hour stretches, Tr. at 92, and Dr. Sironich-Kalkan found that she can stand and walk for three hours, see Tr. at 301.

In these ways, the "evidence suggests a relatively mild physical impairment posing, to the layperson's eye, no significant . . . restrictions."  See Manso-Pizarro, 76 F.3d at 17-18; Roberts, 67 F. App'x at 623.  Thus, the ALJ was permitted

to make a commonsense judgment about Andrews' physical limitations.  See Gordils, 921 F.2d at 329 (finding no expert required); Perez, 958 F.2d at 447 (same); Roberts, 67 F. App'x at 624 (same); cf. Manso-Pizarro, 76 F.3d at 17–19 (finding expert required because record on claimant's heart condition was sufficiently ramified, containing diagnoses, symptoms, treatment, and lengthy hospitalizations).  Although Andrews surely had severe mental impairments, the ALJ permissibly concluded that she did not have physical limitations that precluded sedentary work.  I do not find reversible error.[6]

## IV.  CONCLUSION

For the reasons stated, I grant the Acting Commissioner's motion to affirm (Doc. No. 15) and deny Andrews' motion to

---

[6] Any error was harmless.  The ALJ found that Andrews "has the residual functional capacity to perform a full-range of work at all exertional levels," subject to non-exertional limitations.  Tr. at 108.  Even if the ALJ erred in finding that Andrews could physically perform very heavy work, that error was harmless because the ALJ permissibly concluded that she could perform sedentary work.  See Gordils, 921 F.2d at 329.  The ALJ and the vocational expert specifically identified a significant number of sedentary jobs that Andrews can perform.  See Tr. at 115–16 (identifying 448,000 sedentary jobs nationwide); see also Dashnaw v. Astrue, 2011 DNH 178, 16–17 (finding 30,000 jobs nationwide to be significant); Vining v. Astrue, 720 F. Supp. 2d 126, 137 (D. Me. 2010) (collecting cases and finding approximately 10,000 to 11,000 jobs nationwide to be significant).

reverse (Doc. No. 9).  The clerk is directed to enter judgment

accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 20, 2017

cc:  Laurie Smith Young, Esq.
     T. David Plourde, Esq.
     Terry L. Ollila, Esq.